goes into effect is also unconstitutional. It is, at least, legally possible that the auditor may not disapprove the agreement. He may approve it or he may let it go into effect by not disapproving it. Plaintiffs will not suffer any injury unless he does disapprove it.

The motions for interlocutory injunctions are therefore overruled. As to windstorm insurance they are overruled, because defendants concede that plaintiffs are entitled to the increased rates as to such insurance, and disclaim any intention to interfere with them.

---

## THE ERMA S.

(District Court, S. D. Florida. July 24, 1926.)

No. 2160.

1. **Evidence ☞158(28)—Testimony of workmen's employer and superintendent that work was done and bill correct held inadmissible, in absence of foundation.**

Where workmen repairing tug made out and filed time cards from which entries in their employer's books were made, and no foundation for secondary evidence was laid, testimony of the employer and his superintendent that work was done and bill sued on correct was inadmissible.

2. **Equity ☞71(1).**

Laches is not so much a matter of time elapsed as of one's opportunities to act.

3. **Maritime liens ☞61—Repairer of tug held barred by laches from asserting lien against bona fide purchaser.**

Repairer of a tug, which was afterward sunk within five miles of its yard, who waited until after it was bought by a bona fide purchaser, who raised and repaired it, *held* barred by laches from asserting a lien thereon.

In Admiralty. Suit by the Fogal Boat Yard against the tugboat Erma S. Decree dismissing libel.

C. L. Brown, of Miami, Fla., for libelant.

Hooks & Lohmeyer, of Miami, Fla., for respondent.

CALL, District Judge. This cause comes on for a final hearing upon the libel, answer, and testimony taken before the commissioner. The libel is filed to recover the amount of $490 for work done and materials furnished in repair of the tug by libelant. The claimant in his answer puts in issue the furnishing of the materials and doing the work, as well as stating affirmatively the circumstances of his becoming the owner.

From the testimony it appears that, while one Swartz was in possession and control of the tug, and operating her in the towing business in and around Miami, he took her to libelant's boat yard for certain repairs; that subsequent to the doing of the work a partial payment was made by Swartz; that subsequently the tug sunk, was raised and placed in a canal, where she again sunk, and while in this sunken condition was purchased by claimant, raised, repaired, and sold after attachment. It is established law that one furnishing labor and material for repairs acquires a maritime lien on the vessel repaired. It is equally well established law that a maritime lien, once acquired, follows the vessel into whosesoever hands she comes, unless it is lost through laches.

[1] In the instant case, the libelant, for some reason, failed to produce his books to sustain the account attached to and made a part of his libel, but contented himself with having his superintendent swear that the work was done and the bill correct, and swearing to it himself, and this in the face of claimant's objection, entered at the time, and the further fact shown that time cards were made out by the workmen and filed with the bookkeeper, from which the entries in the books were made. No ground was laid to introduce secondary evidence, and the objections of claimant are well taken. This condition would leave the libelant without any testimony to support his claim, but in admiralty I do not think a decree dismissing the libel would be proper, without giving libelant the opportunity to prove his case by competent testimony. I therefore will proceed to consider the defense of laches made by the answer.

[2] It appears that the last work was done about April 5th and a payment of $150 on account made some two weeks after. After that time the tug was sunk, some five miles away from libelant's boat yard, and lay in that condition until bought, raised, and repaired by claimant. Admiralty administers equity as far as may be in its decrees. It is well settled that laches is not so much a matter of time elapsed as of one's opportunities to act.

[3] Here the contest is between a bona fide purchaser and the claim of one furnishing materials and labor in repairs to a vessel exposed to the elements. Therefore a short delay may constitute laches under the circumstances of this case. A tugboat, engaged in towing in and around Miami harbor, with a repair bill amounting to $490, disappearing from the knowledge of libelant

from about the 20th of April, and no effort made to ascertain her whereabouts, the boat in the meantime sunk. Is it using due diligence by the holder of a secret lien, like admiralty, to sit quietly by until this sunken boat is purchased, raised, and repaired, before asserting the lien? I think not. I am of opinion that the libelant was guilty of such laches as will displace his lien in favor of the claimant.

For this reason, a decree dismissing the libel at libelant's cost will be entered.

## THE LYNX II.

(District Court, S. D. New York. April 14, 1926.)

**1. Customs duties ⚙⟞126—Vessel seized under customs laws releasable on bond (Comp. St. §§ 1564, 1567).**

A vessel seized "under any law respecting the revenue from imports or tonnage or the registering and recording, or the enrolling or licensing of vessels," on application to the court, is releasable on bond, under Rev. St. § 938 (Comp. St. § 1564); the exception in section 941 (Comp. St. § 1567) of vessels "seized for forfeiture" being limited to release on bond by the marshal as therein provided.

**2. Admiralty ⚙⟞57—Vessel seized for violation of internal revenue law may be released on bond (Comp. St. §§ 5841h6, 5841h12–5841h14, 6352, 8086, 8132).**

A vessel seized, under Rev. St. §§ 3450, 4337, 4377 (Comp. St. §§ 6352, 8086, 8132) and Tariff Act 1922, §§ 587, 593(a)–594 (Comp. St. §§ 5841h6, 5841h12–5841h14), for transporting merchandise with intent to defraud the revenue may be released on bond under the general practice in admiralty covered by Admiralty Rule 12.

**3. Admiralty ⚙⟞57.**

Release on bond of vessel seized for violation of National Prohibtion Act, tit. 2, § 26, is mandatory (Comp. St. § 10138½mm).

In Admiralty. Suit by the United States against the motorboat Lynx II. On application of claimant for release of boat on bond. Granted.

Emory R. Buckner, U. S. Atty., of New York City (James A. Farmer, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Louis Halle, of New York City, for claimant.

AUGUSTUS N. HAND, District Judge. This is an application by the owner of the motorboat Lynx II, libelled for violation of Rev. Stat. U. S. §§ 3450, 4337, and 4377 (Comp. St. §§ 6352, 8086, 8132), as well as the National Prohibition Act (Comp. St. § 10138¼ et seq.), and sections 587, 593 (a), and 593 (b), and section 594 of the Tariff Act of 1922 (Comp. St. §§ 5841h6, 5841h12–5841h14), to release her on bond.

[1] Section 938 of the Revised Statutes (Comp. St. § 1564) provides for bonding in cases where a vessel is seized "under any law respecting the revenue from imports or tonnage, or the registering and recording, or the enrolling and licensing of vessels." Rev. Stat. § 941 (Comp. St. § 1567), which excepts "cases of seizure for forfeiture under any law of the United States," evidently is limited to filing a bond with the marshal in cases of suits for penalties in double the amount claimed where no forfeiture is sought.

[2] I cannot see how the exception of "seizure for forfeiture" in section 941 can be regarded as excluding all cases of forfeiture from the provisions for bonding in section 938. Such a construction makes an exception in one statute equivalent to affirmative legislation against the release of a vessel in cases generally covered by the language of another. Moreover it derogates by implication from the general practice of courts of admiralty in cases covered by the broad terms of a rule laid down by the Supreme Court.

[3] The fact that section 26 of title 2 of the National Prohibition Act (Comp. St. § 10138½mm), makes bonding mandatory, and that vessels have long been released on bond in this and the Eastern district, when seized for violation of the revenue laws, is an additional reason for adhering to the settled practice.

The dictum in The Three Friends, 166 U. S. at page 68, 17 S. Ct. 495, 41 L. Ed. 897, involved a filibustering statute with special considerations of public policy, and that decision, as well as that of Judge Brown in The Mary N. Hogan (D. C.) 17 F. 813, was made when the admiralty rule did not, as the present rule 12, contain mandatory language.

The motion is granted.